**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

November 1, 2021

# In the Court of Appeals of Georgia

A21A1017. TEASLEY v. CLARK.

McFADDEN, Presiding Judge.

In this appeal, the father of a minor child challenges trial court orders awarding the child's stepfather temporary visitation rights as an equitable caregiver of the child under OCGA § 19-7-3.1. The appellant claims that this statute is unconstitutional; but no such constitutional issue was ruled on by the trial court, so it may not be raised on appeal. The appellant further claims that the trial court's orders do not comply with the holding in *Land v. Wrobel*, 220 Ga. 260 (138 SE2d 315) (1964); but his reliance on that case is misplaced since it was decided prior to enactment of, and does not involve, the equitable caregiver statute at issue in this case. And contrary to the appellant's additional claim that the trial court erred in failing to include findings of

fact in its equitable caregiver order, no such findings were required to be set forth in the order. So we affirm.

1. *Facts and procedural posture.*

Craig Clark, the stepfather of minor child B. T., filed a complaint against Wayne Teasley, the biological father of B. T., seeking standing as an equitable caregiver and joint legal and secondary physical custody of the child. In his complaint and attached affidavit, Clark alleged that he began dating B. T.'s mother, Stephanie Baumer (later, "Stephanie Clark"), in 2010, when B. T. was one year old; that he married her in 2013 while stationed with the military in Virginia; that after his discharge from the military in 2014, the three of them lived together in Georgia; that in 2016, they had another son, B. T.'s half-brother H. C.; that Stephanie Clark died in a car accident in 2020; that Clark had helped care for and support B. T. until the time of Stephanie Clark's death, after which B. T. went to live with Teasley; and that during their years living together, Clark and B. T. developed a bond as parent and child. Teasley filed an answer and motion to dismiss the complaint, but failed to file his responsive affidavit as required by OCGA § 19-7-3.1 (b) (2). The trial court held evidentiary hearings, after which it entered an order establishing Clark's standing as an equitable caregiver of B. T. pursuant to OCGA § 19-7-3.1 (b). The following day,

2

the court entered another order awarding Clark certain visitation rights with B. T. on a temporary basis. Teasley appeals, challenging both the temporary visitation order and the order establishing Clark's standing as an equitable caregiver.

2. *Constitutionality of statute.*

Teasley challenges the constitutionality of OCGA § 19-7-3.1, claiming that it exceeds the bounds of the due process clause. Even if we assume "that this issue [was] raised below, [it] was not distinctly ruled upon by the trial court. We will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point." *Haynes v. Wells*, 273 Ga. 106, 108 (3) (538 SE2d 430) (2000) (citations and punctuation omitted). "Because the trial court did not rule on the constitutional question[], the constitutional issue[ is] not properly before this [c]ourt." *Franzen v. City of Atlanta*, 359 Ga. App. 462, 469 (5) (857 SE2d 237) (2021).

3. *Equitable caregiver and temporary visitation.*

Teasley argues that the trial court's orders granting Clark standing as an equitable caregiver entitled to temporary visitation must be reversed because they do not conform with the Supreme Court's decision in *Land v. Wrobel*, 220 Ga. 260 (138 SE2d 315) (1964), which affirmed an award of child custody to a mother instead of

a stepmother. But Teasley's reliance on *Land* is misplaced since that case was decided long before enactment of the equitable caregiver statute at issue in the instant case. "[E]ffective July 2019, the Georgia General Assembly enacted [OCGA § 19-7-3.1,] specifically granting standing to 'equitable caregivers' to seek custody of a minor child without 'disestablishing' the parentage of the child." *Wallace v. Chandler*, ___ Ga. App. ___ (859 SE2d 100) (2021) (citation, punctuation, and footnote omitted). Because *Land* did not involve the equitable caregiver statute, it does not control, and provides no basis for reversing, the trial court's rulings made pursuant to OCGA § 19-7-3.1.

4. *Findings of fact.*

Teasley contends that the trial court's order granting Clark standing as an equitable caregiver should be vacated because it does not set forth specific findings of fact. But OCGA § 19-7-3.1 does not mandate that such specific findings of fact be set forth in the order. The statute does require that a trial court find by clear and convincing evidence that the individual seeking standing as an equitable caregiver has:

> (1) Fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life; (2) Engaged in consistent caretaking of the child; (3) Established a bonded and

4

dependent relationship with the child, which relationship was fostered or supported by a parent of the child, and such individual and the parent have understood, acknowledged, or accepted that or behaved as though such individual is a parent of the child; (4) Accepted full and permanent responsibilities as a parent of the child without expectation of financial compensation; and (5) Demonstrated that the child will suffer physical harm or long-term emotional harm and that continuing the relationship between such individual and the child is in the best interest of the child.

OCGA § 19-7-3.1 (d).

In its order establishing Clark's standing as an equitable caregiver, the trial court expressly made all of these required findings by clear and convincing evidence. While there were no other specific findings of fact set forth in the order, as noted above, OCGA § 19-7-3.1 does not require that a court make such specific written findings of fact supporting its rulings. By contrast, such a requirement is plainly set forth in OCGA § 19-7-3, the grandparent visitation statute that immediately precedes the equitable caregiver statute in the same Georgia code chapter on parent and child relationships. See OCGA § 19-7-3 (c) ("The court shall make specific written findings of fact in support of its rulings.") As this court has previously noted,

the grandparent visitation statute's requirement that the trial court issue specific written findings of fact supported by clear and convincing evidence is an apparent anomaly among domestic relations statutes, given that the Georgia General Assembly has imposed no similar duty in contested divorce, alimony and custody actions, even in those cases that involve past acts of family violence.

5

*Van Leuvan v. Carlisle*, 322 Ga. App. 576, 579, n. 2 (745 SE2d 814) (2013). Because the equitable caregiver statute, like most other domestic relations statutes in Georgia, imposes no duty on the trial court to issue specific findings of fact in support of its rulings, Teasley's claim that the trial court's order should be vacated is without merit.

*Judgment affirmed. Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur*.